## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JESSICA ANDREAS and**
**JENNIFER LOPEZ,**

    Plaintiffs,

    v.                                                                                        **CIV. NO. 07-312 JC/ACT**

**NORTHWESTERN MUTUAL LIFE**
**INSURANCE COMPANY/NORTHWESTERN**
**MUTUAL, and BRIAN BAILEY,**

    Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Compel Defendant Northwestern Mutual's Answer to Interrogatory No. 19, filed March 7, 2008 [Doc. 72]. Upon review of the pleadings and being otherwise advised in the premises, the Court finds that Plaintiffs' Motion is not well-taken and will be denied.[1]

Plaintiffs are financial representatives previously associated with Northwestern Mutual. Jessica Andreas resigned her position in April of 2005 and Jennifer Lopez resigned her position in February of 2006. As financial representatives, Plaintiffs worked on a pure-commission basis.

When a financial representative terminates her contract with Northwestern Mutual, she has three options with regard to her former clients. First, if a financial representative has jointly handled a client with a second financial representative, then the second financial representative typically will

---

[1] The Court rescinds its prior Order [Doc. 79] granting Plaintiffs' Motion.

continue to handle the client. Second, the financial representative may designate a financial representative to whom they wish to service their clients. Third, the remaining clients are referred to as "orphan" clients. Beginning in 2003, "orphan" clients were put into a Client Relations Center and were reassigned to existing financial representatives.

Plaintiffs' Interrogatory No. 19 asks:

For each account, policy or other source of commission income sold by either Plaintiff at any time during the course of their association with Northwestern Mutual, please state the name of the financial representative to whom the policy or account was reassigned following the termination of each Plaintiffs' contract with Northwestern Mutual.

The Court finds that the discovery requested is not "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). When Plaintiffs originally filed suit they were seeking damages for failure to pay their "renewal" commissions for two years following their resignation. On January 29 and 30, 2008, while this interrogatory was pending, it was established through deposition testimony Plaintiffs were not entitled to "renewal" commissions based upon the language of the contract. It is undisputed Plaintiffs are not entitled to "renewal" commissions.

Nor is the information sought relevant to Plaintiffs' claim of gender discrimination. As set forth above, Plaintiffs could control the distribution of their clients following their resignation. If Plaintiffs did so, whether Plaintiffs chose male or female representatives would be irrelevant to their claims. Similarly, if Plaintiffs were working with another financial representative and thus sharing a client, the client would typically be reassigned to the second financial representative. The fact that Plaintiffs jointly worked with other financial representatives and their gender is not relevant to their claim of gender discrimination.

Finally, Plaintiffs argue that events subsequent to a particular time period , the distribution of "orphan" clients, are relevant when "part of a continuing policy or practice that includes acts

within the relevant time period."[2]  Reply at 8.   Northwestern Mutual has stated and Plaintiffs have not disputed that  a review of the documents concerning "orphan" clients that Plaintiffs received, demonstrate that "orphan" clients were not distributed on the basis of gender.  Moreover, at the deposition of Angella Cole-Shaw, she testified she was solely responsible for distributing "orphan" clients and she did so based on criteria unrelated to gender.  Northwestern Mutual's Response [Doc. 80] at 8, footnote 5.  Plaintiffs have not shown evidence that the handling of "orphan" clients was discriminatory.  Thus, the discovery sought is not evidence of subsequent acts demonstrating a continuing policy or practice of gender discrimination.  *Land v. Midwest Office Technology, Inc.*, 125 F. Supp.2d 433, 436 (D. Kan. 2000).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Defendant Northwestern Mutual's Answer to Interrogatory No. 19 is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[2]Plaintiffs assert they are not relying on the continuing violation doctrine. Reply at 7.