IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSICA ANDREAS and JENNIFER LOPEZ,

    Plaintiffs,

v.                                                                 Case No. 07-CV-00312 JC/ACT

NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY/NORTHWESTERN MUTUAL and
BRIAN BAILEY,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' INDEPENDENT CONTRACTOR STATUS**

THIS MATTER comes before the Court on *Defendants' Joint Motion for Summary Judgment Re: Plaintiffs' Independent Contractor Status (Doc. 110)*, filed June 30, 2008 ("Motion"). The Court, having reviewed the parties' submissions, finds that Defendants' Motion is not well-taken and therefore DENIES the Motion.

**I.    BACKGROUND**

Plaintiffs formerly worked as insurance agents for Defendant Northwestern Mutual. Defendant Bailey was the manager of the Northwestern Mutual branch where Plaintiffs worked. Plaintiffs contend that Defendant Bailey, and through him, Northwestern Mutual, treated them differently than the male insurance agents who worked at the same branch. They allege gender harassment, gender discrimination, and retaliation pursuant to Title VII as well as the New Mexico Human Rights Act. Additionally, Plaintiffs allege retaliatory discharge, negligent supervision of Defendant Bailey by Northwestern Mutual, intentional interference with business relations and/or contract, and breach of the covenant of good faith and fair dealing.

In their Motion, Defendants ask the Court to determine that Plaintiffs were independent contractors as a matter of law and that summary judgment is therefore appropriate as to all counts except the intentional interference and good faith and fair dealing claims. *Motion* at 1. Plaintiffs initially oppose summary judgment on the grounds that "the issue of employment status is a question of fact which should be resolved by the trier of fact." *Pls.' Response to Defs.' Joint Motion for Summary Judgment on Issue of Employment Status (Doc. 127)* ("Resp.") at 15. Plaintiffs also purport to dispute Defendants' proposed undisputed material facts 1-3, 5-8, 10-13, 15-16, 20-22, 24-37, 40-43, and 45 and propose 52 additional facts they contend are material to the Court's consideration of the Motion. *Resp.* at 1-14.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In response to a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2). The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the Court must consider the record, and all reasonable

inferences therefrom, in the light most favorable to the party opposing the motion. *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

## III. DISCUSSION

In order to establish a prima facie case under Title VII, Plaintiffs must show that Northwestern Mutual was their employer. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998) (explaining that Title VII prohibits discrimination and retaliation only by employers against employees). Defendants contend that Plaintiffs' claims cannot survive summary judgment because the evidence is such that no rational juror could find Plaintiffs were employees as opposed to independent contractors. *Motion* at 1.

The Tenth Circuit notes there are three tests for distinguishing between employees and independent contractors in the context of Title VII claims: (1) the common law agency test; (2) the hybrid test, which looks to the economic realities of the employment relationship as well as principles of common law agency; and (3) the single employer/economic realities test. *Lockard*, 162 F.3d at 1069. *See also Lambertsen v. Utah Dept. of Corr.*, 79 F.3d 1024, 1028-29 (10th Cir. 1996). The Tenth Circuit has so far declined to adopt one of these tests but has recently noted that "[t]he trend in Title VII cases appears to be in favor of adopting [the single employer test]," which is recognized as the most broad, inclusive approach and therefore the one "most urged by plaintiffs in Title VII actions." *Lockard*, 162 F.3d at 1069-70.

Magistrate Judge Smith of this Court has observed that the single employer test "seems more suited to cases where a plaintiff employed by a subsidiary seeks to hold a parent company liable," whereas "the common law agency and hybrid inquiries seem best suited to cases focusing on whether a plaintiff is an employee or an independent contractor." *Ortiz v. Wingard*,

3

173 F.Supp.2d 1155, 1161 (D.N.M. 2001). This Court agrees and will therefore not apply the single employer test, given that there are no parent/subsidiary issues in the present case.

As the Tenth Circuit has noted its agreement with other circuits that there is no "discernible difference between" the hybrid and the common law agency approach, *see Lambertsen* at 1028, and because the parties in the present case both frame their arguments under the hybrid approach, the Court will apply that approach, which includes the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties,

*Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1993). No one factor is more important than the others; rather, courts are to look at the totality of the factors, focusing on "the employer's right to control the 'means and manner' of the worker's performance." *Id.* (internal citations and quotations omitted).

The question whether a plaintiff is an employee versus an independent contractor is no longer considered jurisdictional. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (holding that requirement that employer have 15 or more employees was "an element of the plaintiff's claim for relief, not a jurisdictional issue"); *Xie v. Univ. of Utah*, 243 Fed.Appx. 367, 2007 WL 1936017 at *3 (10th Cir. July 5, 2007) (holding that "we now conclude that employee status is an element of Dr. Xie's Title VII claims rather than a matter of

4

subject matter jurisdiction"). Therefore, trial judges should not resolve disputed facts relevant to the employee-versus-independent-contractor question in order to determine jurisdiction. *Id.* at *4. *See also Herr v. Heiman*, 75 F.3d 1509, 1513 (10th Cir. 1996) (holding that "[w]hether an individual is an employee or an independent contractor is generally a question of fact for the jury to decide").

Defendants in the present case note that Northwestern Mutual has confronted this identical issue in previous litigation, and "[n]o court or administrative agency has ever concluded that Northwestern Mutual's agents are employees." *Memo. In Supp. Of Defs.' Motion for Summ. Judgmt. Re Pls.' Independent Contractor Status (Doc. 113)*, filed June 30, 2008 ("Memo.") at 14. In response, Plaintiffs correctly contend that "each case must be determined on its own facts." *Resp.* at 15-16. The Court's review of the cases referenced by Defendants in which courts "confirmed" that Northwestern Mutual agents were "bona fide independent contractors," *Memo*. at 14, reveals important differences between Northwestern Mutual's treatment of other agents versus Plaintiffs. For example, in the most recent Northwestern Mutual decision cited by Defendants, the court noted that the plaintiff agent in that case

> was free to work whenever and wherever he wanted; that he scheduled his own appointments, kept his own appointment book, and decided whether to keep files; that he did not record or report his time; that no one from NM reviewed, supervised, or monitored the plaintiff's sales efforts, nor tracked his hours or controlled his activities; that he was free to take vacations or sick time as he saw fit; that he could sell NM products anywhere he became licensed; that he generated his own client lists, no clients were provided to him; that he decided what products to sell to customers; that he was free to sell, and did sell non-NM investment products ...; that he was free to decide from whom to solicit business, and he chose the time and place of all solicitations; that he decided what approach and style to use to appeal to customers; that the plaintiff incurred and paid business expenses as he saw fit, including for a

> telephone, fax, postage, copying, office supplies and hiring and paying an assistant....

*Sofranko v. Northwestern Mut. Life Ins. Co.*, 2008 WL 145509 at *4 (W.D.Pa. Jan. 14, 2008).

Similarly, the plaintiff in *Weary v. Cochran*, which was also cited by Defendants,

> was paid solely on a commission basis; he was free to take other jobs—and, in fact, sold insurance policies for approximately fourteen other insurance companies; he set his own hours and could take vacation at his leisure; he employed his own staff and paid them out of his own pocket; he decided whom to solicit for business; he paid for his own office space, equipment, supplies, car and travel expenses; and he kept his own financial records and monitored his own profit and loss.

377 F.3d 522, 526 (6th Cir. 2004). Notably, there was also a strong dissent in *Weary*, which recognized Northwestern Mutual handbook guidelines and materials controlling many details and aspects of agents' job performance and stating, among other things, that agents should "be aware of the need to prevent, detect and rectify any deviation from the 'Northwestern Mutual Way.'" *Id.* at 530.

In pointed contrast to the plaintiffs in *Sofranko* and *Weary*, Plaintiffs in the present case have presented facts which, if true, indicate that Defendants exercised more rigid control over the means and manner of their job performance. For instance, although Defendants offer that Plaintiffs were free to determine the who, what, when, and where of each insurance sale, *Memo.* at 15-16, Plaintiffs indicate there were written guidelines in Defendants' office indicating that new associates "are expected to work a full day (7:30 a.m. to 5:30 p.m. or later)" and a minimum of 50 hours per week, including 30 calls per day, and 15 appointments per week, *Resp.* at 2-3. Plaintiffs further claim they were trained to sell Northwestern Mutual products in a specific manner, and they were constantly supervised to ensure they were adhering to their training. *Id.*

at 17. They were required to attend weekly sales meetings, report regularly to their supervisors, maintain logs showing their weekly client activities for their supervisors' review, and maintain certain filing methods. *Id.* at 7. Defendants reportedly monitored Plaintiffs' adherence to these procedures with routine site inspections. *Id.* at 7, 17. Further, Plaintiffs say they were restricted from participating in outside business activities, with Defendant Bailey denying Plaintiff Andreas' request for permission to help out at a friend's restaurant for one evening and denying Plaintiff Lopez' request for permission to host a Pampered Chef party at her home. *Id.* at 5, 17.

After careful review of the facts presented by both sides and analysis of the relevant factors, the Court finds significant factual disputes as to the existence and degree of most factors, which precludes summary judgment. *See Herr*, 75 F.3d at 1513 (holding that "even though the question of whether a worker is an independent contractor or an employee is a question of law, the existence and degree of each factor is a question of fact") (internal quotations and citations omitted).

### A. Plaintiffs' Independence, Skill Level, and Degree of Supervision Required

With regard to the first and second hybrid test factors, Defendants note that Bailey did not accompany Plaintiffs on sales calls unless invited and never did any performance evaluation or formal reprimanding of Plaintiffs. *Memo.* at 17. Plaintiffs state that although Defendant Bailey may not have accompanied them to sales calls, they were nonetheless expected to use a script written by Defendants during their sales calls. *Resp.* at 8. Plaintiffs dispute Defendants' claim of no formal evaluation, claiming they received performance evaluations at weekly and monthly meetings. *Id.* at 18.

Whereas Plaintiffs admit that insurance sales is generally a highly specialized field with

highly specialized products, requiring specialized skill and training, *Memo.* at 18, they also state that neither of them had any special skills when they began working for Defendants; it was only through the training and supervision provided by Defendants that Plaintiffs acquired specialized skills, if any. *Resp.* at 18. They claim that when a defendant such as Northwestern Mutual takes an active role in developing the agent's skills, this should weigh in favor of employee, rather than independent contractor, status. *Id.*

Plaintiffs' position regarding training finds support both in and out of the Tenth Circuit, which has held that "the use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way." *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1443 (10th Cir. 1998) (holding that this factor was not indicative of oil field welders' employment status because they were "told by Flint foremen when and where to weld").

In two unpublished decisions regarding insurance agents, federal courts in Illinois and Indiana reached similar conclusions. Although the court ultimately dismissed the plaintiff's claims after finding he was an independent contractor in *Johnson v. Equitable Life Assurance Soc'y*, it first recognized that a life insurance company's provision of intensive training and supervision of new agents lent support to the plaintiff's argument he was treated more like an employee than an independent contractor. *Johnson*, 1997 WL 417409 at *3 (N.D.Ill. July 22, 1997). The court in *Wilson v. United Farm Bureau Mut. Ins. Co.* found that the defendant insurance company's role in providing training counseled in favor of finding that the agent was an employee rather than an independent contractor. *Wilson*, 1995 WL 378521 at *7 (S.D.Ind. June 15, 1995). Thus, the court indicated that the question of employee versus independent

contractor status should be left to the trier of fact to determine. *Id.* The court in *Wilson* noted specifically that:

> Farm Bureau did not require its contract-agents to bring any education or experience relating to sales or insurance with them to their jobs. It did require its agent to be licensed by the State to sell insurance, but apparently it did not consider whatever study would have led to licensure to be sufficient because it provided its own training regarding not only its specific products but also insurance sales techniques. Wilson actually had sales experience when she started work with Farm Bureau, but Farm Bureau did not acknowledge that experience as relevant by, for example, exempting Wilson from its normal training. The role Farm Bureau took in developing Wilson's skill suggests she was an employee.

*Id.*

In the Court's view, the facts alleged by Plaintiffs pertaining to Defendants' supervision and control of their work performance, if true, could lead a reasonable jury to conclude that this factor supports a finding of employee, rather than independent contractor status.

### B. Northwestern Mutual's Role in Furnishing Equipment

As noted by Defendants, this factor is significant because employees traditionally do not bear any of the expenses of their employment. *Motion* at 19. Defendants emphasize Plaintiffs' contracts with Northwestern Mutual, which state that agents "shall pay all expenses incurred by [them] in the performance of this agreement." *Id.* at 18. Plaintiffs concede they were required to pay for faxes, FedEx charges, long-distance calls, coffee and water, and copy charges, but they contend that Defendants paid the "vast majority of costs associated with running an insurance business"—costs such as office furniture, rent, utilities, phone equipment, fax machine, copier, internet service, and computer software. *Id.* at 19.

Defendants cite to *Oestman* in support of their argument that this factor indicates

Plaintiffs were independent contractors as a matter of law. *Motion* at 19. In *Oestman*, however, the plaintiff "furnished his own office space and equipment," 958 F.2d at 306, whereas Plaintiffs in the present case furnished neither. Although the Tenth Circuit characterized the alleged employer's provision of a shared office, shared telephone, use of a copier, and business cards as minimal in *Xie*, 2007 WL 1936017 at *6, Defendant Northwestern Mutual has arguably provided more equipment to Plaintiffs in the present case. Thus, a reasonable jury could find that this factor also supports a finding of employee, as opposed to independent contractor, status.

    **C.    Length of Employment**

"Independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and of indefinite duration." *Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989)). In *Dole*, for instance, a cake decorator was determined to be more like an employee than an independent contractor because she had worked for the defendant for four and a half years, worked 50-60 hours per week, and planned to work there indefinitely. *Dole*, 875 F.2d at 811. Likewise in *Baker*, where the Tenth Circuit noted that plaintiff rig welders worked for short periods with frequent location not by choice but rather as a function of the oil and gas industry. 137 F.3d at 1442.

Defendants in the present case argue that Plaintiffs' four- and two-year relationships with them are indicative of independent contractor status, *Memo.* at 19-20, whereas Plaintiffs focus on the expected duration of their employment, *Resp.* at 20-21. In the Court's view, it is again the province of the jury to weigh these opposing arguments, as a reasonable jury could determine that this factor supports either employee or independent contractor status.

### F. Method of Payment

Plaintiffs acknowledge they were paid strictly by commission, which they admit is generally an indicator of independent contractor status. *Resp.* at 21. This factor, which is not disputed, therefore counsels in favor of finding as a matter of law that Plaintiffs were independent contractors. *See*, *e.g.*, *Xie*, 2007 WL 1936017 at *6 (concluding the plaintiff was an independent contractor in part because she was not paid a salary); *Ware*, 67 F.3d at 576 (noting that the plaintiff, who was determined to be an independent contractor, worked solely for a commission); *Wilson*, 1995 WL 378521 at *8 (noting that the plaintiffs payment by commission rather than salary "strongly suggests she was an independent contractor"); *Oestman*, 958 F.2d at 306 (noting the plaintiff was paid by commission, one factor which led to the conclusion that he was an independent contractor instead of any employee).

### G. Manner of Termination

Plaintiffs' contracts with Northwestern Mutual restricted the manner in which either party could terminate the working relationship. *Memo.* at 20. Thus, Defendants argue—and the Court agrees—that the undisputed facts as to this factor counsels in favor of a finding of independent contractor status as a matter of law. *Id.* (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 379 (7th Cir. 1991) (holding that a contract providing that either party could terminate the relationship upon giving 30 days notice supported a finding that the plaintiff was an independent contractor).

### H. Plaintiffs' Work as an Integral Part of Northwestern Mutual's Business

Defendants contend they are in the business of underwriting, issuing, and servicing insurance as opposed to selling insurance. *Memo.* at 21. Plaintiffs respond by referencing

11

Defendant Northwestern's admission in discovery that it "is in this business of selling insurance policies." *Resp.* at 23. In addition to this fact dispute, the Court would have difficulty finding as a matter of law that Plaintiffs' work is not integral to Defendant Northwestern's business when there would be no policies to underwrite, issue, or service without the efforts of sales representatives, including Plaintiffs. Due to the factual disputes, the Court finds a reasonable jury could view this factor as supporting either employee or independent contractor status.

### I. Annual Leave, Retirement Benefits, & Social Security Taxes

Plaintiffs and Defendants agree that Defendants did not officially provide Plaintiffs annual leave or other benefits such as retirement or health insurance. *Memo.* at 21; *Resp.* at 22-23. Plaintiffs raise a factual dispute only as to the annual leave factor, noting that they were not able to take leave unless they had the permission of Defendant Bailey. *Resp.* at 22. The Court therefore finds that the retirement and social security factors may arguably weigh in favor of summary judgment, but the annual leave factor appears to weigh against a finding as a matter of law that Plaintiffs are independent contractors.

### J. Intentions of the Parties

The parties agree that Plaintiffs signed contracts representing themselves as independent contractors and held themselves out as self-employed when filling out their tax returns. *Resp.* at 24-25. As a result, the Court finds this factor would tend to support a finding of independent contractor status as a matter of law.

## IV. CONCLUSION

Given the genuine factual disputes as to a majority of the relevant factors, including in particular the degree of control exercised by Northwestern Mutual over the means and manner of

Plaintiffs' insurance sales, the Court finds that a reasonable jury could find Plaintiffs were more akin to employees than independent contractor status. As such, the Court will decline to find Plaintiffs are independent contractors as a matter of law and deny Defendants' Motion.

IT IS ORDERED that *Defendants' Motion for Summary Judgment Regarding Independent Contractor Status* (Doc. 110), filed June 30, 2008, is DENIED.

Dated January 28, 2009.

s/John Edwards Conway

SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

Julie Fritsch, Esq.
Whitney Warner, Esq.
Christopher M. Moody, Esq.
Albuquerque, NM

Counsel for Defendants:

Robert Shawn Oller, Esq.
Phoenix, AZ

Justin E. Poore, Esq.
Barbara G. Stephenson, Esq.
Albuquerque, NM